IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JASON R.,[1]

    Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

    Defendant.

Civ. No. 3:20-cv-01288-MC

**OPINION AND ORDER**

**MCSHANE, Judge**:

    Plaintiff Jason R. brings this action for judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI") under Title XVI of the Social Security Act. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

    Plaintiff alleges that the Administrative Law Judge ("ALJ") erred by failing to credit the opinions of Plaintiff's medical and support professionals. Pl.'s Br. 5–15, ECF No. 14. Because the ALJ's findings are not supported by substantial evidence and the record as a whole reveals Plaintiff is disabled under the Act, the Commissioner's decision is REVERSED and this case is remanded for award of benefits.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case.

1 – OPINION AND ORDER

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff applied for SSI on March 1, 2017, alleging disability since January 1, 2014. Tr. 106. He later amended his alleged onset date to March 1, 2017. Tr. 231, 267. His claim was denied initially and upon reconsideration. Tr. 115, 129. Plaintiff timely requested a hearing before an ALJ and appeared before the Honorable Kimberly Boyce on September 3, 2019. Tr. 70–104. ALJ Boyce denied Plaintiff's claim by a written decision dated September 11, 2019. Tr. 54–64. Plaintiff sought review from the Appeals Council and was denied on June 8, 2020, rendering the ALJ's decision final. Tr. 1, 202–03. Plaintiff now seeks judicial review of the ALJ's decision.

Plaintiff is 33 years old and was 29 years old at the time of his alleged disability onset. *See* tr. 105. Plaintiff has a high school diploma, graduating with a GPA of 1.6. Tr. 98. Although Plaintiff has worked security since 2016, the limited hours do not rise to the level of substantial gainful activity. Tr. 56–57. For SSI purposes, Plaintiff has no relevant work experience. Tr. 63. Plaintiff alleges disability due to major depressive disorder, bipolar disorder (provisional), lower back pain, and morbid obesity. Tr. 106. Plaintiff has also been diagnosed with borderline intellectual functioning. Tr. 131.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) (reaffirming the substantial evidence standard in social security cases). "Substantial evidence is 'more than a mere scintilla but less

than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989) (citing *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986)). "'If the evidence can reasonably support either affirming or reversing,' the reviewing court 'may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1996)).

## **DISCUSSION**

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2012). The burden of proof rests on the claimant for steps one through four, and on the Commissioner for step five. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). At step five, the Commissioner's burden is to demonstrate that the claimant can make an adjustment to other work existing in significant numbers in the national economy after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the Commissioner fails to meet this burden, then the claimant is considered disabled. *Id.*

Plaintiff argues that the ALJ improperly weighed the opinions of Plaintiff's medical providers and support professionals. Pl.'s Br. 5.

Denise Keesee, Plaintiff's former caseworker, provided a functional summary. Tr. 608–614. Ms. Keesee noted that records show Plaintiff "presents with a flat affect, is inattentive, shows long and short term memory deficits, with fair judgment and limited insight." Tr. 610. In an addendum, Ms. Keesee noted that Plaintiff "has demonstrated a limited ability to focus his attention on work activities and stay on task at a sustained rate." Tr. 616. She opined that Plaintiff "is unable to sustain an ordinary routine and regular attendance at work." Tr. 616.

Kristin Kempff, Plaintiff's therapist, opined "that given [Plaintiff's] historical presentation of difficulty focusing, understanding content, and following through on treatment recommendations, that he would be a slow performer and struggle with even easy tasks due to his memory and focus issues. In any setting, including a workplace, we believe that these issues would stand in the way of [Plaintiff's] success." Tr. 617. Dr. John Bischof, Plaintiff's prescribing physician, signed off on this opinion. Tr. 617.

Karla Rae Causeya, PsyD, performed a psycho-diagnostic evaluation with assessment of ability to work. Tr. 730–739. Dr. Causeya opined that Plaintiff had low to moderate limitations in activities of daily living, as he can take care of personal hygiene, prepare simple meals, and take the bus to work. Tr. 736. She opined that Plaintiff had moderate to severe limitations in understanding and memory. Tr. 736. She further opined that Plaintiff had moderate to severe limitations in sustained concentration and persistence. Tr. 737. Dr. Bischof also concurred with this opinion. Tr. 744.

The ALJ found the opinions of Ms. Keesee, Ms. Kempff, Dr. Causeya, and Dr. Bischof "inconsistent with the longitudinal record." Tr. 61. In discounting these opinions, the ALJ noted that Plaintiff

> has maintained his part-time job for three years, he rarely declines an offered schedule, and he would take on more hours if they were available. Although he has sometimes been corrected, he credibly testified that he has never been in any trouble in three years on the job, and he has sustained employment. He consistently displays intact memory and attention on mental status exams during medical visits. There is no evidence to support that he has attendance problems since he has kept the job so long. As noted, he was closed from EAC services because he was stably employed. The record shows overall stable mental health with medication compliance. He has also maintained stability with intermittent non-adherence to treatment.

Tr. 61–62. Plaintiff argues that this blanket paragraph is insufficient to discount the opinions of Plaintiff's treating physician and support professionals. Pl.'s Br. 7.

While Dr. Bischof and Dr. Causeya are medically acceptable sources, Ms. Keesee and Ms. Kempff are considered "other sources" under the regulations that were in effect when Plaintiff applied for SSI. *See* 20 C.F.R. § 416.902. "In order to reject the testimony of a medically acceptable treating source, the ALJ must provide specific, legitimate reasons based on substantial evidence in the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). An ALJ must provide a germane basis for discounting "other" medical source statements. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

In discounting these opinions as inconsistent with the objective medical evidence, the ALJ selectively cites medical visits when Plaintiff presented with intact memory and attention. *See, e.g.* tr. 404, 435, 470, 474, 512, 560, 578, 582, 697, 702, 708, 715. However, Plaintiff does not "consistently display intact memory" as the ALJ asserts. Tr. 61. Plaintiff often presents with short and long-term memory deficits. *See, e.g.* tr. 408, 446, 452, 463, 499, 545, 600, 644, 726. Plaintiff's mental health assessment and psychological evaluations also showed serious memory deficits. *See* tr. 381 ("[Plaintiff] appears to have long term deficiencies in memory. [He] had problems with short-term and long-term memory."); tr. 396, 398 ("The [Wechsler Memory Scale

5 – OPINION AND ORDER

IV] scores indicate significantly deficited [sic] Visual Memory and Delayed Memory."); tr. 736–37. Plaintiff takes his medication monthly by injection because he is not able to consistently remember to take it daily. Tr. 610. Plaintiff's inability to keep track of his appointments, including for his monthly injections, despite reminders from providers and support from his family also evidence his struggles. Tr. 616, 617; *see also* tr. 246 ("[Plaintiff] is unable to maintain care for himself. His level of care at Old Town Recovery Center has been increased to a higher level of care and he continues to display that he is unable to adequately and consistently maintain self-care, attend appointments and manage medication despite requiring just a monthly Abilify injection."); tr. 382 ("[Plaintiff's] symptoms interfere with his ability to coordinate care and identify and access resources to meet needs."); tr. 503. The ALJ's reasoning here is not supported by substantial evidence.

The ALJ also found these opinions to be inconsistent with Plaintiff's activities of daily living, namely his occasional contract security work. Tr. 61. To Plaintiff's credit, he has repeatedly attempted to work, with minimal success. Tr. 496, 611, 731. Before his current job, the longest period of time in which Plaintiff was able to maintain employment was ninety days. Tr. 731; *see also* tr. 616 ("[Plainitff's] employment hours have been reduced and he has been placed on the 'do not call' list at local temporary employment agencies."). Plaintiff displays limited insight into his previous employment and reports "being unaware of why he has been fired from multiple jobs in recent years." Tr. 589. Plaintiff's slow processing speed impedes his ability to be successful at many jobs. Tr. 397. Plaintiff testified that "some of the jobs said [he] was moving too slow" while others said it "just wasn't a good fit." Tr. 85. Plaintiff was let go

from a job detailing cars after only three weeks because "he frequently missed details in his work and needed frequent instruction." Tr. 731.

Plaintiff's current job is unique and does not translate to full-time employment. Plaintiff may choose his shifts and so is not at risk of termination if he cannot make it in to work. Tr. 84. Plaintiff only accepts one shift at a time, so does not need to manage a weekly work schedule. Tr. 84; *see also* tr. 616 ("He is unable to sustain an ordinary routine and regular attendance at work. He sends a text message daily to his supervisor to see if he is working the next day."). Plaintiff receives accommodations at his current job, as his employer and coworkers "know about [his] issues." Tr. 268; *see also* tr. 88. Daily Living Activities assessments corroborate these struggles. Plaintiff has "marked limitations in routine time management" and "serious limitations in meeting day to day needs." Tr. 485. Plaintiff also has "[v]ery serious limitations in problem solving often involving constant supervision." Tr. 524, 601. The ALJ's reliance on Plaintiff's very limited work experience was error and not supported by substantial evidence. The fact that Plaintiff has willingly engaged in useful activity with an employer willing to accommodate Plaintiff's profound disabilities by providing him minimal (and low wage) employment, should not be used against the Plaintiff. The fact that he has been willing to put forth what initiative he is capable of does not negate the fact that he is, by the accounts of all medical providers, disabled. He certainly is not required to condemn himself to a couch as an alternative to mustering some initiative.

Plaintiff also argues that the ALJ did not give sufficient weight to examining physician, Dr. Caleb Burns. Pl.'s Br. 13–15. Dr. Burns performed a neuropsychological evaluation. Tr. 388–400. Dr. Burns noted that Plaintiff "did not appear to be overstating his psychological

7 – OPINION AND ORDER

distress." Tr. 389. Dr. Burns noted that Plaintiff had a somewhat impaired memory for recent and distant events. Tr. 396. He found Plaintiff's attention and concentration to be "okay for the most part," but his insight and judgment poor. Tr. 396. Plaintiff's Full Scale IQ score was calculated at 77; Plaintiff had particular difficulties with processing speed, which Dr. Burns noted was consistent with the slow response rate he observed. Tr. 397. Dr Burns opined that Plaintiff's

> memory deficits are substantial, are real, and they will clearly interfere with his ability to be competitively employable for the foreseeable future. If he is placed in a work situation, he will be unable to remember even moderately detailed work rules and work procedures, will be unable to complete tasks in a timely fashion, will be unable to work and maintain an ordinary routine without special supervision, etc.

Tr. 399.

The ALJ gave partial weight to Dr. Burns' opinion, finding it "partially consistent with the record." Tr. 62. In doing so, the ALJ found that while

> [o]bjective testing by Dr. Burns shows some deficits in memory and overall cognitive functioning . . . [Plaintiff] has maintained his part-time employment for three years. He testified that he receives his work schedule online and mostly always accepts it. He checks and accepts or declines a highly variable schedule on his own. He keeps up with his work schedule and work procedures. He was able to describe his work procedures at hearing. There is no indication he has required special supervision to complete routine job tasks.

Tr. 62.

As with Plaintiff's other providers, the ALJ found Dr. Burns' opinion to be inconsistent with Plaintiff's activities of daily living, mainly his employment. As discussed above, this finding is error and is not supported by substantial evidence.

Because the ALJ erred, the question is whether to remand for further administrative proceedings or an award of benefits. Generally, "when an ALJ's denial of benefits is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for

8 – OPINION AND ORDER

additional investigation or explanation.'" *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012), quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). However, an award of benefits can be directed "where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Remand for calculation of benefits is only appropriate where the credit-as-true standard has been satisfied, which requires:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

This is a rare instance where remand for an award of benefits is appropriate. Here, Plaintiff satisfies all three requirements. The record is fully developed and there are no ambiguities that further administrative proceedings need resolve. As explained above, the ALJ failed to provide sufficient reasons for discounting the opinions of Plaintiff's medical providers and support professionals. Credited as true, these opinions combined with the vocational expert's testimony establish that Plaintiff is disabled under the Act. The vocational expert testified that, in her experience, unskilled work "needs to be completed in a timely manner and if the individual is unable to do it then they hire the next individual." Tr. 102. The vocational expert further testified that if an individual required even five percent more supervision than other employees, they could not "sustain SGA needing that much additional oversight." Tr. 103. Because of Plaintiff's memory deficiencies, slow processing speed, and need for constant supervision, Plaintiff is

disabled under the Act. Moreover, consideration of the record as a whole convinces the Court that Plaintiff is disabled. The Court sees no purpose for further proceedings.

## **CONCLUSION**

For these reasons, the Commissioner's final decision is REVERSED and this case is remanded for award of benefits.

IT IS SO ORDERED.

DATED this 21st day of March, 2022.


                                s/ Michael J. McShane
                                Michael J. McShane
                                United States District Judge

10 – OPINION AND ORDER